**J.M. CALHOON, et al.,**
**Respondents/Plaintiffs,**

v.

**Henry J. BONNABEL, et al.,**
**Petitioners/Defendants.**

No. 82 Civ. 2091.

United States District Court,
S.D. New York.

July 8, 1982.

Dickstein, Shapiro & Morin by Christian E. Liipfert, Washington, D.C., for respondents/plaintiffs.

Christopher P. Keane, P.C., New York City, for petitioners/defendants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

### INTRODUCTION

This case presents a mixed question of procedure and substantive law which, though often probed, has produced no consistent answer nor a uniform doctrinal approach among the federal courts. Broadly framed, the question is whether the general removal statute codified at 28 U.S.C. § 1441[1] permits a state court defendant to remove an action to federal district court on the sole ground that the state claims (causes of action) are wholly preempted by federal law? More specifically, this Court must determine whether it has removal jurisdiction over the present action, which states a claim under N.Y. Labor Law § 198–c 1 and 2 (McKinney Supp. 1980–81)[2] for unpaid, overdue contributions to benefit

---

1. Section 1441 provides in pertinent part:
   (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court *of which the district courts of the United States have original jurisdiction,* may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. [Emphasis added]

2. These subdivisions of the labor law declare:
   1. In addition to any other penalty or punishment otherwise prescribed by law, any employer who is party to an agreement to pay or provide benefits or wage supplements to employees or to a third party or fund for the benefit of employees and who fails, neglects or refuses to pay the amount . . . necessary to provide such benefits . . . within thirty days after such payments are required to be made, shall be guilty of a misdemeanor . . . . Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of a misdemeanor.
   2. As used in this section, the term "benefits or wage supplements" includes . . . reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay.

plans, where it is claimed by petitioners that the entire complaint is preempted by the Employee Retirement Income and Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1144 (1975).[3]

The present action was commenced on March 10, 1982 in the Supreme Court for New York County. It was removed pursuant to § 1441 on April 2, 1982. Respondents then moved to remand the matter to state court pursuant to 28 U.S.C. § 1447(c).[4] On May 28, 1982, oral argument was heard by the Court. Upon further review of the pleadings and judicial authority, the Court concludes that it does have removal jurisdiction over the complaint and therefore denies the motion to remand. The rationale supporting this conclusion is discussed below.

## DISCUSSION

### A. *Background*

Respondents—plaintiffs in the state proceeding—include sixteen Trustees of the following employee benefit plans: the Marine Engineers' Beneficial Association ("MEBA") Pension Trust, the MEBA Medical & Benefits Plan, the MEBA Training Plan, the MEBA Vacation Plan, the Joint Employment Committee, and the Joint Maritime Congress (hereinafter referred to as the "MEBA Plans").[5] Petitioners (defendants) are the executive officers of the

American Coastal & Foreign Shipping Co., Inc., ("American Coastal"), a New York corporation which employs members of the National MEBA and District No. 1—Pacific Coast District, MEBA, AFL–CIO (hereinafter referred to as the "Union"), and which has a collective bargaining agreement with the Union. That agreement includes a provision requiring American Coastal to make payments to the MEBA Plans on behalf of its employees.

Defendants admittedly are in default for contributions due January 1 and February 1, 1982, totalling $105,328.69.[6] On March 2, 1982, the respondents herein commenced a federal action against American Coastal pursuant to ERISA, 29 U.S.C. §§ 1145, 1132(a)(3). Their complaint, currently pending before this Court, alleges that American Coastal failed to make payments to the MEBA Plans due January 1 and February 1, 1982, totalling $105,328.69. The complaint requests an award of damages, costs and attorney's fees, as well as an order directing American Coastal to comply with its obligations under the MEBA Plans.

Shortly after the initiation of the federal lawsuit, respondents commenced this action under the New York labor law against the company's officers.[7] The relief sought includes the overdue payments to the MEBA Plans, unpaid interest, costs and attorney's fees. Petitioners promptly removed the state action, claiming:

---

3. Section 1144 contains the preemption clause of ERISA. It states, in part:

    (a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.... (b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

    . . . .

    (4) Subsection (a) of this section shall not apply to any generally applicable criminal law of a State.

4. Section 1447 governs remand by a federal court of an action improperly removed. It reads, in relevant part:

(c) If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

5. It is undisputed that the MEBA Plans are "employee benefit plans" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3) and are "multiemployer plans" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). *See Calhoon v. American Coastal & Foreign Shipping Co., Inc.*, No. 82–1254, Complaint, ¶ 3.

6. *See* Petition for Removal, filed April 2, 1982, at 2.

7. The statute specifically provides that officers of a corporation in violation of § 198–c "shall each be guilty of a misdemeanor." The section is quoted in full at note 2, *supra*.

The above described action is a civil action of which this court has original jurisdiction under the provisions of Title 28, United States code, Section 1331, and is one which may be removed to this court by the petitioner, defendant therein, pursuant to the provisions of Title 28, United States Code, Section 1441 in that the Plaintiffs are identical in both actions and the defendants in the Supreme Court actions ... are the officers and the directors of the defendant corporation ... in the District Court action.

Petition for Removal, filed April 2, 1982, at 2.

B. *General Principles*

■ Congress has provided in § 1441 that the federal district courts may assume jurisdiction over an action commenced in state court if, *inter alia,* that action could have been commenced by the plaintiff(s) in federal court under the court's original jurisdiction.[8] Before approving a petition for removal, the court must be satisfied that 1) the court from which the action has been removed acquired both subject matter and personal jurisdiction,[9] and 2) the subject matter of the removed action is within its original jurisdiction. The second requirement must be satisfied by review of the allegations in the state court complaint, uncolored by potential or asserted defenses or counterclaims of the defendant(s). As explained by the court in *Committee of Interns and Residents v. N.Y. State Labor Relations Board,* 420 F.Supp. 826, 831 (S.D. N.Y.1976):

[T]here can be no removal on the basis of a federal question asserted for the first time in defendant's answer or petition for removal. [citation] These principles were succinctly summarized in *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936), which holds:

"To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element and an essential one of the plaintiff's cause of action.... The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction and defeated if they receive another.... A genuine and present controversy not merely possible or conjectural one, must exist with reference thereto ..., and the controversy must be disclosed on the face of the complaint, unaided by the answer or the petition for removal."

See also *Westmoreland Hospital Association v. Blue Cross of Western Pennsylvania,* 605 F.2d 119, 122 (3d Cir.1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980); 14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3721 at 530 (1976).

The rule that the essence of the controversy must be determined from the perspective of the plaintiff, whose interests in control over his litigation and in his choice of forum must be respected, does not limit the reviewing court to the words on the face of the complaint or to plaintiff's characterization of his claims. *Cf. Gully v. First National Bank in Meridian,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936) ("the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a

---

**8.** *See* 14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3721 at 515–16 (1976). Petitioners submit that the present dispute raises a claim under ERISA within the Court's original jurisdiction under 28 U.S.C. §§ 1331 and 1337. Those sections provide:

§ 1331(a) The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

§ 1337 The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regu-

lating commerce or protecting trade and commerce against restraints and monopolies.

**9.** *Accord Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922) ("If the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."); *Cummings v. United States,* 648 F.2d 289, 291–92 (5th Cir.1981).

statement of the plaintiff's cause of action and anticipates or replies to a probable defense."). Instead:

> The court must ascertain from the complaint whether federal law is a pivotal issue in the case, one that is basic in the determination of the conflict between the parties. *Gully v. First National Bank,* 299 U.S. 109, 117–18, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Ivy Broadcasting Co. v. AT & T,* 391 F.2d 486, 489 (2d Cir.1968). However, the lack of any reference to federal law in the complaint is not controlling. *Sylgab Steel & Wire Corp. v. Strickland Transportation Co.,* 270 F.Supp. 264, 267 (E.D.N.Y.1967); 1A *Moore's Federal Practice* ¶ 0.160 at 185–87 (2d ed. 1974).

*North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 233 (2d Cir. 1978). *Accord State of New York v. Local 144, Hotel, Nursing Home and Allied Health Services Union,* 410 F.Supp. 225, 226–27 (S.D.N.Y.1976) ("inquiry must be made as to whether, regardless of artful pleading, in fact the action is one governed by federal law.").

The deceptively obvious distinction between claims asserted by plaintiffs on the one hand, and defenses raised by defendants on the other, breaks down when a state defendant removes the proceeding to federal court on the ground that the state law under which a plaintiff is claiming relief is preempted by federal statute.[10] Some courts have viewed preemption merely as a defense to claims under state law, and therefore have remanded actions removed under a theory of preemption.[11] For example, in *Long Island Railroad Co. v.*

*United Transportation Union,* 484 F.Supp. 1290 (S.D.N.Y.1980), former Chief Judge MacMahon remanded an action in which defendant argued that plaintiff's claims under New York's Taylor Law, N.Y. Civil Service Law §§ 201 *et seq.* (McKinney 1973), were preempted by the Federal Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* After noting that the Railway Labor Act, if it applied, would prohibit plaintiff's suit for injunctive relief against the union's threatened strike, Judge MacMahon wrote:

> We do not believe this is a case where the plaintiff has skillfully avoided mentioning the federal right upon which it relies. The complaint is clearly drawn only in terms of New York's Taylor Law; moreover, even if we assume *arguendo* that state law is preempted by the Railway Labor Act, this is by itself no reason to assume that LIRR's complaint can thereby somehow be said to "arise under" federal law, since in that event plaintiff would evidently be left with no remedy whatsoever. "[I]t is illogical to say that the litigant's claim is really predicated on a body of law which grants him no rights." *New York v. Local 1115, supra,* 412 F.Supp. [720] at 723.

*Id.* at 1293. He therefore concluded that the controversy did not "arise under an act of Congress" so as to confer removal jurisdiction, despite defendant's preemption claims.

Other courts have reached a different conclusion.[12] A recent, illustrative case is *Billy Jack I.* There, the court's explication of the preemption concept and its import in the removal context is particularly illuminating, and bears quoting at length:

---

10. The Court is not concerned here with the situation where, although the facts pleaded could state a claim for relief under federal *or* state law, plaintiff has decided to proceed only under state law. If there is concurrent federal and state legislation, plaintiff is free to ignore his federal rights and proceed alone on his state claims. *Accord Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers Local 1–35,* 511 F.Supp. 1180, 1184 (S.D.N.Y.1981) (hereinafter cited as *"Billy Jack I"*).

11. *See* cases collected in *Billy Jack I* at 1185 n. 7.

12. *See* cases collected in *Billy Jack I* at 1186 n. 8; *Hearst Corp. v. Shopping Center Network, Inc.,* 307 F.Supp. 551, 556 (S.D.N.Y.1969). *Cf. Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981) (Court let stand the finding of the district court that "respondents had attempted to avoid removal jurisdiction by 'artful[ly]' casting their 'essentially federal law claims' as state-law claims," and agreed "that at least some of the claims had a sufficient federal character to support removal.").

Federal preemption is not, by its nature, an affirmative defense to a state law cause of action. In the Court's view, it is wiser to view the preemption doctrine as being analogous to a choice-of-law principle. That is, preemption analysis simply tells the court what law, state or federal, should be referred to in order to determine the plaintiff's right to relief in a given case. As in any other choice-of-law context, the two potentially available bodies of law may differ as to whether they afford the plaintiff a remedy, so that a finding of preemption may indeed have the ultimate consequence of causing the plaintiff's defeat. This does not mean, however, that preemption is in any sense an "affirmative defense" as that term is normally understood. For in many cases, and the instant case may well be an example, a finding of preemption provides no "defense" against the plaintiff's claim because the preemptive federal law also provides a remedy to the plaintiff. As is noted below, the fundamental question in preemption analysis is whether Congress intended to *supplant,* not whether Congress desired to *overrule,* state law. Thus, the doctrine of preemption is basically not concerned with guiding the substantive outcomes of cases, although it may often have an outcome-determinative effect. Instead, it really exists to determine the body of substantive law that governs a particular dispute.

In a case of preemption, then, federal law, by definition, provides the only basis for the plaintiff to gain the relief that it seeks, meaning that any time a court finds preemption it should conclude that the action arises under federal law. The Court finds nothing "illogical" in holding that preemption *always* creates "arising

under" jurisdiction, even in a case where the preemptive federal law provides the plaintiff with no right to relief. The reports are certainly well stocked with cases where the plaintiff maintained an action under federal law only to discover to its chagrin that federal law afforded no remedy. Surely there is nothing illogical in describing such cases as having arisen under federal law. Accordingly, no illogic inheres in first using preemption analysis to conclude that federal law governs the dispute before the court, meaning that the action arises under federal law, and then proceeding to determine whether the preemptive federal law affords a basis for awarding relief ....

511 F.Supp. at 1187 (footnote omitted). *E.g., Salveson v. Western States Bankcard Association,* 525 F.Supp. 566, 572 (N.D.Cal. 1981); *Gunter v. AGO International B.V.,* 533 F.Supp. 86, 88 (N.D.Fla.1981).

This Court is not prepared to endorse the extreme position that "preemption *always* creates 'arising under' jurisdiction." While it agrees that logic does not preclude that position, it believes that the language of § 1441, as interpreted by the courts, may require a more conservative stance. It is well established that district courts are courts of limited jurisdiction, and that the removal statute must be "strictly construed against removal jurisdiction, doubt being resolved in favor of remand." *Salveson v. Western States Bankcard Association,* 525 F.Supp. at 571 (and cases cited therein). Thus, when it appears that federal preemption has been asserted by defendants as a defense against the alleged state claims, courts have disclaimed jurisdiction.[13] While the distinction between preemption as a defense and as a choice-of-law rule may be illusory, as suggested in *Billy Jack I,* that

---

**13.** *Guinasso v. Pacific First Federal Savings and Loan Association,* 656 F.2d 1364, 1367 (9th Cir.1981) ("Federal preemption is ordinarily a matter to be raised in defense.... Taken alone, it is not a basis for removal."); *First Nat'l Bank of Aberdeen v. Aberdeen Nat'l Bank,* 627 F.2d 843, 851 (8th Cir.1980) ("an assertion of preemption is a *defense* to plaintiff's state law claim and not a ground for

federal jurisdiction."); *Debevoise v. Rutland R.R. Corp.,* 291 F.2d 379, 380 (2d Cir.), *cert. denied,* 368 U.S. 876, 82 S.Ct. 123, 7 L.Ed.2d 77 (1961); *Committee of Interns and Residents v. New York State Labor Relations Bd.,* 420 F.Supp. 826, 831 (S.D.N.Y.1976). *Cf. National Bank of N. Am. v. Local 553 Pension Fund,* 463 F.Supp. 636, 639, 641 (E.D.N.Y.1978) (ERISA as a defense to creditor's garnishment action).

distinction has substantial support in the reported decisions.[14]

It is not necessary for the Court to commit itself to either camp in the jurisdictional skirmish at this time because even the preemption-as-defense advocates recognize an "artful pleading" exception to the rule that jurisdiction must be established on the face of plaintiff's complaint.[15] This exception was stated in *Salveson v. Western States Bankcard Association*, 525 F.2d at 572:

> An exception to the rule limiting the court's examination to the face of the complaint arises in cases in which plaintiff seeks to conceal the federal nature of his claim by fraud or obfuscation. Although the court is not free to second-guess the plaintiff's chosen form of pleading, it is entitled to assure itself that the plaintiff has not by "artful pleading" sought to defeat defendant's right to a federal forum. [citations] In those circumstances, it is proper for the court to examine the record to determine if the real nature of the claim is federal, notwithstanding plaintiff's characterization to the contrary.

■ Thus, if after examining the record in this case the Court is persuaded that the rights plaintiffs seek to vindicate are controlled by federal substantive law, and that state law does not exist as an independent source of individual rights, it should not remand simply because the complaint alludes only to a state statute as the basis for liability.[16] Removal jurisdiction exists if "the action, though ostensibly grounded solely on state law, is actually grounded on a claim in which federal law is the exclusive authority." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 408, 101 S.Ct. 2424, 2432, 69 L.Ed.2d 103 (1981) (Brennan, J., dissenting on other grounds). *See also id.* at 397 n. 2, 101 S.Ct. at 2427 n. 2 (Rehnquist, J., Opinion of the Court).

### C. Application of General Principles

Respondents (plaintiffs) contend that this action is not a civil action arising under the laws of the United States and therefore was improvidently removed.[17] "A review of plaintiffs' complaint establishes that plaintiffs rely solely upon a body of state law, rather than federal law." [18]

■ The Court disagrees. Instead, it finds that the claims asserted under N.Y. Labor Law § 198–c are wholly controlled by ERISA and that the state court proceeding is an imaginative attempt by plaintiffs to conduct preempted litigation in state court parallel to that initially commenced in

---

**14.** The doctrinal conflict in this discrete area may be partially resolved if we consider the manner in which defendants have pressed their preemption claims. Where defendants do not seek to preclude relief to plaintiffs under the facts pleaded, but merely assert that the reviewing court—state or federal—must apply federal law, it is clear that both the letter and the intent of § 1441 are served by permitting the defendant to remove the action to federal court. However, where the defendant seeks to *defeat* a claim on the ground that the alleged state action runs afoul of some unrelated federal statute, the language of § 1441 will not permit a finding that the facts or claims pleaded "arise under" federal law. This resolution apparently was adopted by the courts in *Guinasso v. Pacific First Fed. Sav. and Loan Ass'n*, 656 F.2d 1364, 1367 (9th Cir.1981) and *First Nat'l Bank of Aberdeen v. Aberdeen Nat'l Bank*, 627 F.2d 843, 853 (8th Cir.1980).

**15.** *See, e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427

n. 2, 69 L.Ed.2d 103 (1981); *Gunter v. AGO Int'l B.V.*, 533 F.Supp. 86, 88 (N.D.Fla.1981); *Long Island R.R. Co. v. United Transp. Union*, 484 F.Supp. 1290, 1293 (S.D.N.Y.1980); *National Bank of N. Am. v. Local 533 Pension Fund*, 463 F.Supp. 636, 639 (E.D.N.Y.1978); *State of New York v. Local 144, Hotel, Nursing Home and Allied Health Services Union*, 410 F.Supp. 225, 226–27 (S.D.N.Y.1976). *Cf. Glass Bottle Blowers Ass'n v. Certainteed Corp.*, 93 Lab.Cas. (CCH) ¶ 13,335 (M.D.Ga.1981).

**16.** *Accord Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir.1980).

**17.** The Court's determination under §§ 1331 and 1441 renders unnecessary any consideration of petitioners' alternative theory of original jurisdiction under § 1337.

**18.** Plaintiffs' Reply Memorandum of Law, dated May 26, 1982, at 4.

this Court.[19] Since federal law must be applied to the present claims, removal jurisdiction may be invoked by petitioners under § 1441.[20]

In addition to arguing that preemption, in general, may not provide the basis for removal under § 1441, plaintiffs contend that the claims asserted against these defendants under § 198–c of the labor code are not preempted by ERISA. This argument finds support in a line of New York cases commencing with *Goldstein v. Manga-* *no,* 99 Misc.2d 523, 417 N.Y.S.2d 368 (Kings Co. 1978).[21] There, plaintiff, the president of a union local and trustee of its pension and retirement funds, sued the vice-president of the corporate employer for damages under § 198–c. Plaintiff alleged that the employer had failed to make contributions to the Funds, and that the vice-president was aware of the failure to turn over funds due. When the defendant moved to dismiss the suit against him, the court held that an implied civil remedy exists under § 198–c

---

**19.** *See Salveson v. Western States Bankcard Ass'n,* 525 F.Supp. 566 (N.D.Cal.1981). There, the court noted that a plaintiff may not defeat removal where "Congress has preempted authority over the subject matter but plaintiff seeks to avoid the effect of preemption by attempting to plead a state cause of action." *Id.* at 574. In particular, the court identified the situation in which "plaintiff has previously asserted substantially the same claim as a federal" claim, as one permitting removal of the subsequent state action to federal court. *See also Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Glass Bottle Blowers Ass'n v. Certainteed Corp.,* 93 Lab.Cas. (CCH) ¶ 13,335 (M.D.Ga. 1981) (federal action in labor dispute initiated prior to state action for interference with contract); *Long Island R.R. Co. v. United Transp. Union,* 484 F.Supp. 1290, 1293 (S.D.N.Y.1980), *citing Metropolitan Transp. Auth. v. United Transp. Union,* No. 77–2358 (E.D.N.Y. February 6, 1978) (Weinstein, J.).

This is not to suggest, however, that respondents have acted fraudulently in this matter. As discussed above and *infra,* there is substantial ambiguity in the relevant areas of law which precludes any finding of bad faith.

**20.** *Debevoise v. Rutland R.R. Corp.,* 291 F.2d 379 (2d Cir.), *cert. denied,* 368 U.S. 876, 82 S.Ct. 123, 7 L.Ed.2d 77 (1961), cited by respondents, is not to the contrary. There, the attorney general of Vermont petitioned the Court of Chancery to permit the State to run the Rutland Railroad by way of receivership. The petition stated that the strike at the railroad would "wreak havoc with the economic welfare, the health and comfort of the state . . . ." *Id.* at 379. The railroad subsequently removed the receivership from the Chancery Court to federal district court and obtained an injunction against " 'any conduct in execution of the purported receivership.' " *Id.* at 380 (footnote omitted). On appeal, the Second Circuit reversed the district court's denial of the State's motion to remand, finding that the case did not "arise" under the Constitution or laws of the United States: "Vermont did not rely upon a right created by the federal statute but rather it

asserted its own sovereignty [ ]" in seeking a receivership. *Id.* The Court did not hold that, in no circumstances, may the total preemption of a field by federal law satisfy the "arising under" requirement of § 1441. Instead, it followed the rule stated in *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) that the mere fact that federal law may invalidate the state law upon which the suit is premised does not render the complaint one under federal law. Based on the circumstances of the case before it, the Court concluded:

> Both the constitutional and the statutory defense could of course be pressed in the state courts and ultimately perhaps might be decided by the United States Supreme Court . . . . But the claims could be asserted only as a defense to Vermont's petition for the receivership and thus their existence does not meet the requirement of § 1441 that the plaintiff's claim be one "arising under" federal law. It is well settled that the likelihood—even the certainty—that federal law will enter a case by way of defense does not confer jurisdiction upon the district courts.

*Id.* (citations omitted). Notably, the defendant did not allege that the claims of the State asserted before the Chancery Court were wholly preempted by federal law. Instead, it argued that the receivership constituted an unconstitutional taking and that it "interfered with the allegedly exclusive federal power over railway labor disputes created by the Railroad Labor Act." *Id.* Furthermore, it is apparent that the entire proceeding, including the form of relief sought, was a creation of state law unrelated to and not comprehended by the Railroad Labor Act.

**21.** *See, e.g., Excavators Union Local 731 Welfare Fund v. Zurmuhlen,* 68 A.D.2d 816, 414 N.Y.S.2d 140, 142 (1st Dep't 1979); *Sasso v. Millbrook Enterprises, Inc.,* 108 Misc.2d 562, 438 N.Y.S.2d 59, 61–62 (Nassau Co. 1981); *Johnson v. Clay Partition Co., Inc.,* 93 Misc.2d 414, 402 N.Y.S.2d 912, 913–914 (New York Co.), *aff'd,* 65 A.D.2d 737, 411 N.Y.S.2d 189 (1st Dep't 1978).

—a criminal statute—for members of the class sought to be protected by the statute. 417 N.Y.S.2d at 372–73. Addressing the question of preemption, the court noted that "ERISA's preemption is nearly total and that ... ERISA effectively excludes all state participation in the regulation of employee benefit plans." *Id.* 417 N.Y.S.2d at 374. It further found that ERISA's failure to provide a remedy against corporate officers "does not exempt this case from the preemption provision." *Id.*

The court, however, held that the implied civil cause of action under § 198–c was not preempted, due to exception (4) of the ERISA preemption clause for any "generally applicable criminal law of a State." With little explanation, the court concluded:

> It is clear that § 198–c falls within the ERISA exemption as a statute affecting all employees within the state, thus permitting the assessing of liability against Mangano under that statute.

*Id.* 417 N.Y.S.2d at 375.

This conclusion is at odds with the clear language of ERISA, its legislative history, and its construction by the courts. Recently, after observing that "ERISA is a 'comprehensive and reticulated statute,' which Congress adopted after careful study of private pension plans[,]" the Supreme Court discussed the question of federal preemption under ERISA:

> In this instance, we are assisted by an explicit congressional statement about the pre-emptive effect of its action. The same chapter of ERISA that defines the scope of federal protection of employee pension benefits provides that "the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." This provi-

sion demonstrates that Congress intended to depart from its previous legislation that "envisioned the exercise of state regulation power over pension funds," ..., and meant to establish pension plan regulation as exclusively a federal concern.

*Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 510, 522–23, 101 S.Ct. 1895, 1899, 1906, 68 L.Ed.2d 402 (1981) (footnote and citation omitted). It ultimately found that a New Jersey statute was preempted.

> It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law rather than directly, through a statute called "pension regulation." ERISA makes clear that *even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern.*

*Id.* at 525, 101 S.Ct. at 1907 (emphasis added). *See also Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287, 1303 (2d Cir.1981) (the legislative history of § 1441 "leads us to conclude that the statute is as sweeping as it seems."); *Stone & Webster Engineering Corp. v. Ilsley,* 518 F.Supp. 1297, 1300 (D.Conn.1981).

■ Assuming, without deciding, that § 198–c is a state criminal statute of general applicability, the Court is persuaded that an implied civil cause of action against corporate officers is contrary to Congress' intent in adopting § 1144.[22] Indeed, the very liberal test articulated by the *Goldstein* court for implying a civil remedy from a state criminal statute suggests the ease with which states could circumvent Congress' decision that ERISA supersede "any and all State" regulation of employee benefit plans. Therefore, the criminal law exemption to § 1144 cannot be interpreted to permit implied civil actions or remedies which otherwise would be preempted.[23]

**22.** The Second Circuit declined to rule on this very issue in *Allen v. The Katz Agency, Inc.,* 677 F.2d 193, 200 (2d Cir. 1982). *Cf. Bucyrus-Erie Co. v. Department of Indus., Labor and Human Relations,* 599 F.2d 205, 208 (7th Cir.1979) (exemption (4) "indicates an intention that the word 'relate' extend even to laws of general applicability (as well as an intention to preempt criminal statutes limited

in application to welfare benefit plans). The exception would otherwise have been unnecessary.").

**23.** The mere fact that the remedy sought by plaintiffs in this case would be unavailable to them under ERISA does not alter the conclusion, *supra,* that plaintiffs' claims are controlled solely by federal law. *Avco Corp. v.*

CONCLUSION

The Court finds that petitioners properly removed this action from state court, and therefore denies respondents' motion to remand under 28 U.S.C. § 1447. Respondents' complaint, though facially stating a claim under a New York labor statute, is predicated on rights and duties governed exclusively by ERISA. Since ERISA has preempted all laws relating to any employee benefit plan, and since respondents here are seeking to recover overdue payments to employee benefit funds, the controversy "arises under" federal law within the intendment of 28 U.S.C. §§ 1331, 1441.

In view of the Court's determination that the claims under state law are preempted by ERISA, that respondents have a prior action already pending before the Court which involves the same transactions and occurrences alleged in the present complaint, and that ERISA provides no remedy against the corporate officers who are the defendants herein, the present complaint is dismissed.[24]

It Is So Ordered.

*Aero Lodge No. 735*, 390 U.S. 557, 560–61, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968).

24. Respondents remain free to amend the complaint in the federal action if justice so requires. Fed.R.Civ.P. 15(a).